IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL NO. 1:12cr358 |
| v. | ) | |
| | ) | Sentencing Date: March 13, 2015 |
| | ) | |
| JOSE ABAD HEREDIA PRADO, | ) | The Honorable Leonie M. Brinkema |
| also known as "Pava," | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED[1] POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Dana J. Boente, United States Attorney, and Mary K. Daly, Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, files this Position of the United States with Respect to Sentencing. The United States moves for a one-level reduction of the defendant's sentencing guidelines level pursuant to U.S.S.G § 3E1.1(b) in recognition of the defendant's timely guilty plea. Further, the United States asks the Court to impose a sentence of 57 months, with credit for time served in Colombia and the United States as a result of the instant offense. This sentence—at the low-end of the Sentencing Guidelines range of 57 to 71 months—would appropriately account for each of the factors set forth in 18 U.S.C. § 3553(a). Nevertheless, in the event that the Court finds that imposing a sentence at the bottom of the Guideline range would create an unwarranted sentencing disparity with the

---

[1] The government files this Amended Position of the United States to correct two typographical errors. Additionally, the government mistakenly filed its original Position on Sentencing Under Seal although the case had been unsealed as of February 10, 2015. The government files this pleading on the public docket.

sentences of co-defendants, the government respectfully requests that the Court impose a sentence no less than 42 months of imprisonment.

## BACKGROUND

Between April 2012 and August 2012, the Drug Enforcement Administration (DEA) and Colombian law enforcement conducted an investigation targeting an international drug trafficking organization ("DTO") based in Colombia. As part of this investigation, two confidential sources ("CS-1" and "CS-2," or collectively "the CSs") posed as individuals who could procure aircraft to transport multi-ton loads of cocaine internationally. During this investigation, the CSs recorded multiple telephone calls and meetings with Hugo Enrique Sanes Saavedra, the defendant JOSE ABAD HEREDIA PRADO, also known as "Pava," and other members of this DTO, during which the CSs agreed to purchase eight kilograms of cocaine from the DTO for redistribution in New York. The CSs represented to the defendant, Sanes Saavedra, and their co-conspirators that the proceeds of the drug sales in New York could be invested in the air transportation of large load of cocaine to Honduras. The defendant helped broker this eight-kilogram transaction along with his co-conspirator Sanes Saavedra, and received a commission for doing so.

On or about April 13, 2012, the CSs met with the defendant and Sanes Saavedra in Bogota, Colombia. During this meeting, the CSs represented to the defendant and Sanes Saavedra that they could procure aircraft to transport a large load of cocaine—more than 400 kilograms—internationally. The CSs represented that they would need half of the transportation cost ($1,200 per kilogram) upfront. Sanes Saavedra expressed reluctance to pay the CSs upfront, but agreed to sell eight kilograms of cocaine to CS-1 and CS-2 with the understanding that CS-1 and CS-2 would distribute the cocaine in New York to maximize profits. Cocaine that is acquired in Colombia for approximately $2,500 to $3,000 per kilogram

can be sold in New York for approximately $30,000 per kilogram. CS-1 and CS-2 told the defendant and Sanes Saavedra that they would use the proceeds from the sale of the eight kilograms of cocaine in New York to fund the transportation of a much larger load of the DTO's cocaine. This meeting was observed by law enforcement officers and video recorded.

During the spring of 2012, the CSs continued to negotiate the sale of eight kilograms of cocaine with Sanes Saavedra, Honduran national Marlon Geovanni Canelas Rodriguez, and others. During this period, the defendant was intercepted communicating with his co-conspirators and the CSs over Blackberry PIN messaging and cellular telephone regarding the planned transaction and procuring an aircraft to transport a larger load. Additionally, CS information indicates that the defendant, along with his co-conspirators, attempted to secure a seller for the eight kilograms of cocaine to the CSs.

On June 6, 2012, CS-2 met Canelas Rodriguez and Jennifer Colorado Alba in Villavicencio, Colombia to complete the sale of eight kilograms. CS-1 did not attend this meeting, but remained in the area with an undercover Colombian law enforcement official (the "UC"). CS-1 and the UC were posing as the individuals controlling the money for the purchase of the cocaine. CS-2, Canelas Rodriguez and Alba then went to the Unicentro shopping center in Villavicencio, and met with Jorge Eliecer Arango Cardona and two other individuals. Arango Cardona informed the group that the cocaine was located in a city about two hours from Villavicencio, and that they should travel to that location.

CS-2, Arango Cardona, Canelas Rodriguez, and others traveled by car to a cocaine stash house. Upon arrival at the stash house, Arango Cardona presented a large quantity of cocaine to CS-2, and told CS-2 to pick out the eight kilograms of cocaine that CS-2 wished to purchase. CS-2 took a picture of the cocaine and sent it electronically to CS-1, who was waiting with the

UC.  After CS-2 selected the eight kilograms at the stash house, CS-2, Canelas Rodriguez, Arango Cardona and one of Arango Cardona's associates traveled back to the Unicentro shopping center and waited for the eight kilograms to be delivered.  CS-1 met the group at Unicentro, and instructed them to travel to a nearby hotel to complete the cocaine transaction.

When the group arrived at the hotel, an individual arrived on a motorcycle and delivered a bag containing the cocaine to CS-1, CS-2 and the UC.  The UC then brought the cocaine to a room within the hotel for inspection.  After the UC inspected cocaine, the UC gave a bag containing $23,200 in U.S. currency to Canelas Rodriguez.  The approximately eight kilograms of suspected cocaine were seized by the DEA.  A subsequent analysis confirmed that the substance was cocaine.

On or about June 7, 2012, CS-2 met with Canelas Rodriguez and Colorado Alba in Bogota.  While CS-2 was with Canelas Rodriguez, Canelas Rodriguez contacted the defendant to coordinate their return travel to Cucuta, Colombia.  At approximately 4:00pm that day, CS-2, Canelas Rodriguez and Colorado Alba met with the defendant to discuss the defendant's commission for brokering the eight kilogram transaction between the CSs and Sanes Saavedra. Canelas Rodriguez stated that the commission payment owed to Canelas Rodriguez, the defendant and CS-2 was $800.00 each, for a total of $2,400.00.  Canelas Rodriguez transferred a commission to the defendant at this meeting as payment for brokering the deal.  The defendant received approximately $400 - $500 for brokering this deal.  CS-2 made a video recording of the defendant receiving his commission.

The defendant personally distributed, or it was reasonably foreseeable to the defendant that his co-conspirators distributed in furtherance of the conspiracy, at least eight kilograms of cocaine.

The defendant and his co-conspirators were charged in a two-count indictment with

4

Conspiracy to Distribute Five Kilograms or More of Cocaine with Intent to Import, in violation of Title 21, United States Code, Section 963 (Count One), and Distribution of Five Kilograms or More of Cocaine with Intent to Import, in violation of Title 21, United States Code, Section 959(a) and Title 18, United States Code, Section 2. On June 21, 2013, the Colombian National Police arrested the defendant in Colombia. The defendant was extradited to the United States based on the indictment in this district.

On December 18, 2014, the defendant entered a guilty plea to Count One of the Indictment. The Probation Office calculated the defendant's total offense level as 25, his criminal history category as I, and the applicable Guideline range as 57 to 71 months of imprisonment. Additionally, because the defendant meets the criteria set forth in Section 5C1.2 of the U.S. Sentencing Guidelines, the Court may impose a sentence without regard to the statutory mandatory term of imprisonment of 120 months. The government agrees with the calculation in the Presentence Report and submits that a sentence of 57 months is reasonable in this case.[2]

---

[2] The defendant's contention that he played a minimal role in the offense is clearly erroneous. The defendant's role cannot be likened to the unidentified individual who delivered the eight kilograms of cocaine to the CSs by motorcycle, for example. By contrast, the defendant was engaged in the negotiations surrounding the transaction, and intended to procure an aircraft to transport a multi-hundred kilogram load internationally. As such the defendant did not play a minimal role, or even a minor role, and the Guidelines are properly calculated with no role adjustment.

# ARGUMENT

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A) and (B); *Biheiri*, 356 F.Supp.2d at 594.

## A Sentence of 57 Months Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a).

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from

6

further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Applying these sentencing factors to the facts of this case demonstrates that a sentence of at least 57 months of incarceration is appropriate and reasonable.

*Nature and Circumstances of the Offense*:

The defendant helped secure air transportation of large loads of cocaine from the Apure region of Venezuela to Honduras and elsewhere. The defendant helped coordinate the sale of eight kilograms to the CSs, and according to CS information, tried to secure a supplier for the eight kilograms, in order to cover the transportation fee needed to procure an aircraft to be used for international narcotics smuggling. As such, the defendant played a significant role in coordinating the sale of eight kilograms of cocaine to the CSs for redistribution in the United States. While the defendant is held responsible under the Sentencing Guidelines for only the eight kilograms of cocaine that were intended to be distributed in the United States, the government's evidence shows that the defendant intended to procure an aircraft to transport hundreds of kilograms of cocaine internationally. *See* Presentence Investigation Report (PSR) ¶ 13. Cocaine is a powerful narcotic that is abused at a significant cost to the users, the medical community, law enforcement, and society in general. To reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence to international drug trafficking, a significant prison sentence is appropriate and reasonable.

*History and Characteristics of Defendant*:

The defendant is 50 years old. He has accepted responsibility for his role in the offense. The Guidelines already account for the defendant's lack of criminal history and his acceptance of responsibility, as he has received a reduction for acceptance of responsibility pursuant to U.S.S.G

7

§ 3E1.1(b) and safety valve relief under U.S.S.G. § 5C1.2.

The defendant was incarcerated in Colombia while awaiting extradition to the United States between approximately June 2013 and October 2014. The government agrees that the defendant should receive credit for time served in Colombia and the United States as a result of the instant offense.

It appears that the defendant has been convicted of serious crimes in Colombia, to include Homicide and a Firearms offense. PSR ¶ 37. The government has received a copy of the defendant's criminal history report from Colombia, a copy and translation of which are attached hereto as Exhibit A. The government has requested further information regarding the defendant's Colombian convictions through the DEA in Colombia, but has received no further information. Pursuant to U.S.S.G. § 4A1.2(h), the defendant's foreign convictions do not count towards his Criminal History Category, but may be considered under § 4A1.3 (Adequacy of Criminal History). Furthermore, the Court should weigh the defendant's foreign criminal record when considering the history and characteristics of the defendant under 18 U.S.C. § 3553(a). Given the defendant's previous conviction for a crime of violence in Colombia, the Court should consider a Guideline sentence in this case. Such a sentence would be higher than the sentences received by the two co-defendants in this case, neither of whom had previous convictions for crimes of violence.

Furthermore, the defendant, like his co-defendants, had a clear financial motivation for becoming involved in the instant conspiracy, and therefore his sentence should be significant so as to deter the defendant from engaging in future criminal conduct, and to deter others who may be motivated to make money through drug trafficking. Under these circumstances, a sentence of at least 57 months is sufficient, but not greater than necessary, to reflect the seriousness of the

offense and to provide just punishment and adequate deterrence in this case.

Finally, a sentence of 57 months would not create an unwarranted sentencing disparity with either Hugo Enrique Sanes Saavedra or Jorge Eliecer Arango Cardona, both of whom were sentenced to 42 months of imprisonment. Although Sanes Saavedra arguably played a more significant role in the conspiracy, this Court sentenced Sanes Saavedra below the applicable Guidelines range based, in part, on Sanes Saavedra's alleged kidnapping and extortion by members of Colombian law enforcement. The government has no information that the defendant was similarly victimized as a result of his involvement in the instant conspiracy. Further, as discussed above, the defendant has a significant criminal record in Colombia, and therefore the defendant should receive a higher sentence than his co-defendants who have no serious convictions. Accordingly, the government submits that a 57-month sentence would not create an unwarranted sentencing disparity in this case. Nevertheless, in the event that the Court finds that imposing a sentence at the bottom of the Guideline range would create an unwarranted sentencing disparity, the government respectfully requests that the Court impose a sentence no less than 42 months of imprisonment.

# CONCLUSION

Therefore, for the above-stated reasons, the United States submits that a sentence of 57 months is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). In the event that the Court finds that imposing a sentence at the bottom of the Guideline range would create an unwarranted sentencing disparity, the government respectfully requests that the Court impose a sentence no less than 42 months of imprisonment.

Respectfully submitted,

Dana J. Boente
United States Attorney


                /s/
Mary K. Daly
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:   703-299-3700
Fax: 703-837-8242
Email Address: Mary.K.Daly@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March 2015, I filed the foregoing on the CM/ECF system which will send an electronic notice to:

Michael S. Arif, Esq.
Counsel for Jose Abad Heredia Prado

/s/
Mary K. Daly
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:   703-299-3700
Fax: 703-837-8242
Email Address: Mary.K.Daly@usdoj.gov